# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WESLEY PAUL CHERAMIE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-0201** |
| **JERRY LARPENTER, ET AL.** | **SECTION "J"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). On February 10, 2020, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by telephone.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I.    Factual and Procedural Background

The plaintiff, Wesley Paul Cheramie ("Cheramie"), is a convicted inmate currently housed in the Bossier Parish SHISAP Reentry Center in Plain Dealing, Louisiana. He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Terrebonne Parish Sheriff Jerry Larpenter, Major Begeron as Warden of the Terrebonne Parish Criminal Justice Complex ("TPCJC"), Medical Director Pete Neil, Lieutenant Clark, Sergeant Chase Blanchard, and Corporal Kira seeking monetary and injunctive relief.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 9. Cheramie's sworn testimony was electronically recorded.

A.     **The Complaint**

In his complaint, Cheramie alleges that, on November 25, 2019, he awoke with blood in his mouth.  He notified the guard on duty to alert the medical personnel.  About 30 minutes later, Lt. Clark, Sgt. Blanchard, and EMT David escorted him off of the cot to check his mouth and found no source for the bleeding.  He claims that Lt. Clark and Sgt. Blanchard then made sexual assertions and "shamed" him by asking him "how many black snakes attacked you," thereby accusing him of having homosexual oral sex with black inmates.  He also claims that these inappropriate comments were connected to his disclosure 11 months earlier upon his arrival at the jail that he had been a victim of rape 25 years before while in a juvenile detention facility.  He stated that he reported having been beaten and raped by two black inmates and a black guard.

In addition, Cheramie alleges that, on the way to the medical unit, Sgt. Blanchard prompted Corporal Kira, a black female guard, to ask him how many black snakes attacked him.  He believes these actions and comments were made to antagonize him and cause him mental stress.

Cheramie further states that he filed an administrative grievance at the TPCJC about this "sexual assault" by the guards, but he had not received an answer at the time the complaint was filed.  He also claims that he filed a "PREA complaint" about the incident through his current facility in Bossier Parish.

Cheramie further claims that he did not receive proper medical treatment for his oral bleeding because of the guards' sexual comments.  He believes that his complaints were not taken seriously because of their comments.  He further claims that his medical issues may have been caused by exposure to black mold in the TPCJC along with his prior problems with internal bleeding.

B.    The *Spears* Hearing

In the *Spears* Hearing, Cheramie testified that he is 39 years old and serving a five year sentence for his conviction on three counts of simple burglary.  He expects to be released from the re-entry program on June 12, 2020.

Cheramie testified that, on November 25, 2019, around 1:30 a.m., he awoke with a strong metallic taste in his mouth and spit blood.  The guard did not answer when he pushed the call button to get medical attention.  When he began to get dizzy, the other 24 inmates continued to call for assistance.  About 40 minutes after his first attempt to call for help, Lt. Clark, Sgt. Blanchard and the medic named "David" arrived to check his mouth using a flashlight.  Soon, Lt. Clark and Sgt. Blanchard asked him, "how many black snakes attacked you."  He explained that, eleven months earlier, around February of 2019, he reported after 25 years that he was a victim of prison rape in a juvenile detention center.  At that time, he was beaten and raped by two black inmates and a black guard.  He feels that the officers must have known about his report to classification when they made the comments about homosexual activity.

Cheramie also stated that he asked EMT David to take him to medical to see if he was having gastrointestinal bleeding liked he had in the past.  He testified that the officers escorted him to medical but continued to make homosexual remarks to him.  At one point, they passed Corporal Kira and Sgt. Blanchard whispered something to her.  She then asked Cheramie "how many black snakes attacked you, one or two?"

Cheramie testified that he filed an administrative grievance form about the "sexual harassment" by the guards.  He received a first step response denying him relief because he was not affected by the situation.  He filed for second step review claiming that he was affected because he never got medical treatment to check for internal bleeding because the guards made light of his

mouth bleeding.  Within a few weeks after filing the second step grievance, he was transferred to Elayn Hunt Correctional Center ("Hunt").  He was at Hunt for about an hour when he was sent to Bossier Medium Correctional Center, where he stayed for about one week.  He was then moved to the SHISAP reentry program where he is now.

Cheramie further testified that he did not receive any medical testing at TPCJC to determine if he was having internal bleeding.  Since he has been in Bossier Parish, he has seen doctors about other matters and reported the bleeding incident at TPCJC.  The doctors have conducted routine medical checkups.  He has had no specific treatment for internal bleeding except being taken off NSAIDS, which can cause internal bleeding.

Cheramie told the Court that he named Sheriff Larpenter as a defendant solely because he was Sheriff and supervisor over the jail officials.  Similarly, he sued Major Begeron because he is the Warden of TPCJC.  He indicated that he the Warden may have read his grievance form but he is not certain that he had knowledge of the incident.

He stated that he sued Mr. Neil because he is the head of the medical unit.  Cheramie sued Mr. Neil because he did not get the medical attention he wanted.  However, he did not speak to Mr. Neil.  He was seen only by Dr. Richard Haydel and EMT David.

Cheramie sued Lt. Clark and Sgt. Blanchard because they made the homosexual comments and references to his prior prison rape.  He testified that his claim of a PREA violation and sexual harassment refers specifically to the "black snake" comments these officers made.  Cheramie denied, however, that there was any physical component or injury.

He also named Corporal Kira for her inappropriate question but concedes that she only repeated what Sgt. Blanchard told her to ask.  He stated that she did not do anything wrong, only what she was told to do.

## II.    **Standards for Frivolousness Review**

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.    **Analysis**

Cheramie alleges that the defendants actions and comments described in his Complaint and at the *Spears* Hearing violated his constitutional rights and are actionable under § 1983.  However,

Cheramie concedes that he suffered no physical injury as a result of any action by the named defendants or the conditions of his confinement at TPCJC.

Instead, Cheramie seeks compensation for his mental and emotional pain and embarrassment. Under 42 U.S.C. § 1997e, prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *See Harper*, 174 F.3d at 719 (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997)). Cheramie does not claim to have suffered any physical injury and cannot state a claim under § 1983.

Nevertheless, even considering the individual claims asserted against the defendants, Cheramie's claims are frivolous and fail to state cognizable § 1983 claims.

### A.    No Supervisory Liability

Cheramie named Sheriff Larpenter, Warden Begeron, and Medical Director Neil as defendants because they were supervisory figures over the jail and other prison officers, although they were not personally involved in or aware of the incident or his medical care. The claims against these defendants are frivolous and otherwise fail to state a claim.

To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros*., *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson,* 454 U.S. 312 (1981). Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to liability on a claim for damages under §1983. Thus, supervisory officials, like Sheriff Larpenter, Warden Begeron, and Mr. Neil cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.

*See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A defendant would be liable under § 1983 only if he was "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

In this case, Cheramie does not allege that the Sheriff, Warden, or Medical Director were personally involved in the incident or with his medical care or personally advised of the alleged unsanitary conditions to which he claims he was exposed. Instead, Cheramie speculates that, among these three defendants, only Warden Begeron may have known about his concerns through the grievance complaints he filed at TPCJC.

Assuming the grievances were forwarded to Warden Begeron for response, Cheramie fails to state a non-frivolous claim against the Warden. Inmates generally have no constitutional right under the First or Fourteenth Amendments to an effective grievance procedure. *See Wilcox v. Johnson,* 85 F.3d 630, 1996 WL 253868 at *1 (6th Cir. 1996)(Table, Text in Westlaw); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994); *Buckley v. Barrow,* 997 F .2d 494, 495 (8th Cir. 1993); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991); *Flowers v. Tate,* 925 F.2d 1463, 1991 WL 22009 at *1 (6th Cir. 1991) (Table, Text in Westlaw). In other words, there is no constitutional guarantee that the inmate will receive a response from or be satisfied with the responses by the prison officials. *Id.* His dissatisfaction with the answer he received in the grievance process is insufficient to state a § 1983 claim.

Furthermore, Cheramie has not alleged that he has suffered any physical injury directly resulting from any order, training, or other policy implemented by the Sheriff, Warden, or Medical

Director that would create a vicarious liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). There is no basis here for supervisory liability under § 1983.

Cheramie has not alleged a personal action or connection that would render Sheriff Larpenter, Warden Begeron, or Mr. Neil liable under § 1983 or liable for the actions or inactions of subordinates or medical staff at the jail. For these reasons, Cheramie's claims against Sheriff Larpenter, Warden Begeron, and Medical Director Neil as supervisory officials over the prison and its staff are frivolous and otherwise fail to state a claim for which relief can be granted under 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

### B.    Inappropriate Comments

Cheramie asserts that the defendants Lt. Clark, Sgt. Blanchard, and Corporal Kira inappropriately suggested that he had engaged in homosexual oral sex and may have done so with reference to his revelation that he was the victim of a prison rape that occurred 25 years earlier. While the Court does not condone such incentive comments by custodial officers, Cheramie has failed to state a claim redressable under § 1983.

It is well settled that mere comments and inappropriate language used by prison staff do not violate the Eighth Amendment. *See Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995); *Bishop v. Arcuri*, No. 09-CA-751, 2010 WL 11484314, at *5 (W.D. Tex. May 17, 2010) ("Defendants' off-color comments, inappropriate expressions, and rude behavior, even if perceived as offensive or degrading, do not run afoul of the Constitution."). "Further, verbal sexual abuse does not violate an inmate's constitutional rights." *McDowell v. Wilkinson County Corr. Facility*, No. 08-CV-0279, 2008 WL 5169632 at *7 (S.D. Miss. Dec. 3, 2008) (citing *Doe v. City*

8

*of Haltom*, 106 F. App'x 906, 908 (5th Cir. 2004)).  Thus, any rude and insensitive comments or behavior towards Cheramie, while disgraceful conduct, did not rise to the level of deliberate indifference or other constitutional violation.

The claims against these defendants are frivolous and otherwise fail to state a claim for which relief can be granted under 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

### C.    **PREA Claim**

Cheramie asserts that he identified the verbal actions of the defendants Lt. Clark, Sgt. Blanchard, and Corporal Kira as violations of the Prison Rape Elimination Act ("PREA")[3] and reported them as such to officials upon his arrival in Bossier Parish.  The Court also notes that Cheramie made clear at the *Spears* Hearing that there was no physical component or injury tied to his claim.  The PREA claims are instead based solely on the verbal comments made by Lt. Clark, Sgt. Blanchard, and Corporal Kira.  His PREA claims are frivolous and otherwise fail to state a claim for which relief can be granted.

The purpose of PREA is to promote prison officials' accountability for preventing and addressing prison rape.  *See Krieg v. Steele*, 599 F. App'x. 231, 232-33 (5th Cir. 2015).  However, PREA does not create a private cause of action or a federal right enforceable under § 1983 action.  *Id*.; *Herndon v. Tanner*, No. 17-02350, 2017 WL 3841836, at *4 (E.D. La. Jul. 26, 2017).  "[A]ny claim raised under the PREA is properly dismissed as frivolous."  *Id*. at 233; *see also Moses v. GEO*, No. 17-CV-1595, 2018 WL 1354068, at *3 (W.D. La. Mar. 14, 2018) (dismissing claims that officials failed to follow PREA protocol); *Peterson v. VOA Greater New Orleans, Inc.*, No. 16-17611, 2017 WL 695398, at *2 n.1 (E.D. La. Feb. 22, 2017) (Feldman, J.) ("The Fifth Circuit

---

[3]*See* 34 U.S.C. § 30301-30309 (West Pamphlet 2018).

has additionally stated that any claim raised under PREA should properly be dismissed as frivolous.").

For these reasons, Cheramie has failed to state a non-frivolous claim against these defendants under § 1983. His PREA claims should be dismissed as frivolous under § 1915, § 1915A, and § 1997e.

### D.    <u>Eighth Amendment and Conditions of Confinement</u>

Cheramie generally complains that the TPCJC has black mold, which may have aggravated his preexisting health condition. He has not alleged or established a constitutional violation in the conditions of his confinement to recover under § 1983 against these defendants.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

In this case, Cheramie has made only general assertions that the TPCJC has black mold. He also has not identified any particular ailment that may have been impacted by alleged mold. Furthermore, there is no legal basis for the named defendants to be held liable for the conditions of the jail building itself.

Under Louisiana law, the presence of black mold at the jail may not be the responsibility of the sheriff or the individual jailers. Louisiana law divides the responsibility for its parish jails.

The duty to administer and operate the jails falls on the sheriff of each parish. La. Rev. Stat. Ann. § 15:704. However, the Parish government is charged with its jails' physical maintenance. La. Rev. Stat. Ann. § 15:702. Cheramie has not named the Parish or a responsible Parish official as a defendant in this case.

Instead, Cheramie has identified the Sheriff and other jail officials without alleging that they were aware of the presence of mold or any impact it may have had on him. He has not established the requisite personal involvement necessary to state a § 1983 claims against the defendants. *Douthit*, 641 F.2d at 346. Furthermore, the official must have acted with deliberate indifference to a known risk of harm to be liable under § 1983.

An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson*, 245 F.3d at 459. The plaintiff must prove facts sufficient to show "at a minimum, that the prison officials realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987). Applying these factors to the instant case, Cheramie has not alleged a constitutional violation based on the conditions in TPCJC.

### 1.    **Black Mold**

Cheramie has not alleged a condition at the jail considered a constitutional violation. The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir.

1982).  The courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In keeping with this philosophy, the federal courts have recognized that certain institutional problems such as dampness, mold, and stale air do not amount to a constitutional violation.  *See*, *e.g.*, *White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted*, 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012).  Even assuming that such conditions existed or that Cheramie had symptoms or other irritations associated with the conditions at the jail, he has not established that any of the defendants intended a risk of serious harm to his person or intentionally ignored that risk.  He has not stated a constitutional violation. *See McCarty v. McGee*, No. 06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").  The mere the presence of mold in a prison setting does not render an inmate's confinement unconstitutional.  *See*, *e.g.*, *Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *adopted*, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) ("the presence of

black mold in living areas, eating areas, and shower areas" are "no more than a *de minimis* level of imposition with which the Constitution is not concerned.").

Cheramie's claim is frivolous and otherwise fails to present a claim for which relief can be granted.  The claims should be dismissed for this reason under § 1915, § 1915A, and § 1997e.

### 2.    **Adequate Medical Care**

Cheramie contends that, although he saw medical personnel at TPCJC and his current facility, he has not been tested for internal bleeding that may have been the cause of the incident on November 25, 2019.  Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983.  *Estelle*, 429 U.S. at 104-105.  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).

A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk.  *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).  Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment.  *Estelle*, 429 U.S. at 104.  This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  *Id*.  Thus, in order to state a cognizable claim, a

prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.*

However, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). Rather, a plaintiff must show that defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In this case, Cheramie does not allege that he was denied any treatment or response from medical personnel. Instead, he complains that they would not acknowledge his request to be tested for internal bleeding after the isolated incident of mouth bleeding on November 25, 2019. This disagreement over the type or amount of care does not establish an indifference to a serious medical need for purposes of the Eight Amendment. Cheramie's disagreement with medical treatment fails to reach that level. *See*, *e.g.*, *Domino*, 239 F.3d at 756. A healthcare provider's decision to provide different treatment or no treatment is a matter for medical judgment that is not without more to be second-guessed by a court. *See Gobert*, 463 F.3d at 346.

14

For the foregoing reasons, Cheramie's medical indifference claims are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

## IV.    Recommendation

It is therefore **RECOMMENDED** that Cheramie's § 1983 complaint against the defendants, Sherriff Larpenter, Major Begeron, Medical Director Pete Neil, Lt. Clark, Sergeant Chase Blanchard, and Corporal Kia, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this 2nd day of April, 2020.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.